IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| In the Matter of: | ) | Case No. BK25-40199 |
| | ) | |
| DARCEE D. MILLER, | ) | Chapter 13 |
| | ) | |
| Debtor. | ) | |
| | ) | |

**Order Denying Confirmation of Chapter 13 Plan**

The debtor, Darcee D. Miller, seeks confirmation of her Fourth Amended Chapter 13 Plan. Her former spouse, Jeff Miller, objects. A confirmation hearing was held October 14, 2026. James C. Bocott appeared for the debtor. Claude E. Berreckman, Jr., appeared for Mr. Miller. The Chapter 13 trustee did not object or appear.

The plan cannot be confirmed. It does not meet the requirements of 11 U.S.C. §§ 1325(a)(1) and (8), 1325(b)(1)(B), 1325(a)(6), and 1325(a)(3). The debtor has not paid $7,319 in child support first payable after the petition. She seeks to pay it through her plan at a minimum of $50 a month, which is improper. Her child support obligation ends in the summer of 2027, but her plan does not adjust for the change. Her Schedules I and J and Form 122C-2 show a deficit before any plan payment. And she admitted filing this case, in part, "to avoid making payments to Mr. Miller," while proposing a plan paying him nothing on his property settlement claim in a case where she cannot receive a discharge. The debtor may file another plan. If she does not also file amended schedules, the case will be dismissed.

**Findings of Fact**

The marriage of the debtor and Mr. Miller was dissolved by decree entered June 10, 2014. The decree granted Mr. Miller primary physical custody of their sons and awarded him no child support. The debtor was ordered to pay alimony of $600 per month for 48 months, but the payments were earmarked to pay the Millers' significant marital debt. After the alimony payments ended, the debtor was to pay $400 per month for 144 months as a property settlement.[1]

---

[1] Doc. #84 at 1–2.

The debtor fell behind on alimony payments. She filed a Chapter 13 case on November 7, 2023.[2] Mr. Miller filed a claim for unpaid alimony. The debtor objected to the claim, asserting she made direct payments to Mr. Miller he would not credit. After a trial, this court credited the direct payments. It allowed Mr. Miller a priority alimony claim of $4,467.58 and a general unsecured property settlement claim of $59,042.60, both as of November 7, 2023.[3]

The debtor did not complete her Chapter 13 case. She converted it to a Chapter 7 case. The debtor received a Chapter 7 discharge on December 3, 2024. The discharge did not reach the property settlement.[4] Within weeks of the discharge, Mr. Miller garnished the debtor's wages.[5] Her March 21, 2025, pay stub shows $584.32 withheld for the garnishment from a single biweekly check, about $1,266 a month from the debtor's $4,270 net income.[6]

On January 22, 2025, Mr. Miller filed a complaint asking the state court to modify the decree and impose child support.[7] The debtor filed this Chapter 13 case shortly thereafter, on March 10, 2025. The second bankruptcy case came sixteen months after her first case and three months after her Chapter 7 discharge. The debtor's filings contained inaccuracies. She did not explain all of them. They included:

- In her petition she answered "No" when asked whether she had filed for bankruptcy within the last eight years.
- Schedule E/F lists Mr. Miller's claim as "Unknown," even though this court fixed the claim by order.
- Schedule J lists a $585 monthly payment for loans in forbearance.
- Schedule J claims her minor son, who lives with Mr. Miller, as a dependent living with her.

---

[2] Case No. BK23-41052, Doc. #1.

[3] Doc. #83; BK23-41052, Doc. #92 at 7 n.10. During the trial on the claim objection, the parties agreed the property settlement judgment is a general unsecured claim without priority under § 507.

[4] 11 U.S.C. § 523(a)(15); BK23-41052, Doc. #92 at 2.

[5] Doc. #84 at 2, ¶¶ 8, 10.

[6] Doc. #89.

[7] Doc. #84 at 3.

- Her latest plan and amended means test treat the retroactive support as a prepetition arrearage.[8]

The debtor's bankruptcy counsel saw no need to amend because, in his view, the corrections would not change her disposable income.

The debtor answered the state court complaint on July 29, 2025. She objected to any modification, pleaded equitable estoppel, unclean hands, and laches, and sought dismissal.[9] The state court did not act on Mr. Miller's request to modify the decree until March 2, 2026. It found a material change in circumstances warranting child support. Both sons lived with Mr. Miller, and the debtor's parenting time "diminished considerably" after the decree.[10] The state court ordered the debtor to pay Mr. Miller $563 per month in support for the parties' minor son. The court made the support retroactive:

> The first payment of Darcee's child support obligation shall be due and payable retroactively to the 1st of February 2025, with all subsequent payments due on the first day of each month until [the child] reaches the age of majority, dies, marries, becomes self-supporting, or until further order of this Court, whichever event shall first occur.[11]

The son reaches the age of majority in the summer of 2027.

On March 19, 2026, the debtor amended her schedules. She scheduled thirteen installments of support, February 2025 through February 2026, totaling $7,319, as a priority unsecured claim.[12] Only two installments, February 1 and March 1, 2025, totaling $1,126, bear retroactive dates before the petition. The other eleven, totaling $6,193, bear dates after it. The installment due March 1, 2026, the day before the order was entered, is not included. The debtor offered no evidence any part of the $7,319 has been paid. Her schedules, her plan, and the means test she refiled on October 7, 2026, all treat it as unpaid.[13]

---

[8] Doc. #1 at 3; Doc. #85 at 4; Doc. #85 at 7–8; Doc. #88; Docs. #62, #90.

[9] Doc. #84 at 3.

[10] Doc. #84 at 5.

[11] Doc. #84 at 6–7.

[12] Doc. #85.

[13] Doc. #62; Doc. #85; Doc. #90.

Mr. Miller filed a general unsecured claim for $59,991.35.[14] It does not include the support obligation.[15] No one objected to his claim. Aidvantage filed a general unsecured claim of $67,154.28 on behalf of the Department of Education for student loans disbursed between June 2022 and October 2023. Its account history shows the loans are in forbearance, with no payments posted.[16]

The debtor's Fourth Amended Plan calls for 60 payments totaling $40,424.52.[17] It pays AmeriCredit/GM Financial $29,063 on the debtor's vehicle. It pays Mr. Miller the $7,319 as a § 507(a)(1)(A) child support arrearage, at a minimum of $50 a month. The plan contains a nonstandard provision, stating the Aidvantage student loan claim "will be paid as a long-term, unsecured debt to be paid outside the Plan." During the confirmation hearing, the debtor offered no evidence of the loans' repayment terms or when the forbearance ends. General unsecured creditors share whatever remains. After the trustee's fee, seven cents remain.[18] Mr. Miller is paid nothing on his $59,991.35 property settlement claim.

The debtor grosses $6,215 a month. Her Schedule I, dated March 2025, shows net monthly income of $4,270.11.[19] Her current Schedule J, signed March 19, 2026, lists monthly expenses of $4,783, including $585 for student loans, $563 for child support, and $150 for "childcare and children's education."[20] Together, they reflect a monthly deficit of $512.89 before making any plan payment. With the $674.25 plan payment, she is $1,187.14 short every month.

The debtor's means test also contains a shortfall. Her annualized income of $74,580 exceeds the Nebraska median of $63,421 for a household of one, so her applicable commitment period is five years.[21] Her Form 122C-2 deducts,

---

[14] Proof of Claim 2-1.

[15] Mr. He filed his claim May 12, 2025, before the state court imposed support. The proof of claim deadline passed May 19, 2025.

[16] Doc. #88.

[17] Doc. #62.

[18] $40,424.52 minus a 10% trustee fee (the maximum under 28 U.S.C. § 586(e)), leaves $36,382.07. Subtracting $29,063 for the vehicle and $7,319 for the support "arrearage" leaves $0.07.

[19] Doc. #10 at 19–20.

[20] Doc. #85 at 7–8.

[21] Doc. #5.

among other items, $563 a month for child support (line 19), $693.04 for her vehicle loan (line 33b), and $121.98 a month for past-due priority claims, computed as $7,319 divided by 60 (line 35). It reports monthly disposable income of negative $72.24.[22] In her brief, the debtor concedes her monthly disposable income reaches $411.57 once child support ends.

Answering her counsel's leading questions, the debtor agreed she could cover the monthly shortfall on her means test by buying cheaper groceries and clothing, saving on utilities, and limiting discretionary spending. She did not say which expenses, by how much, or since when.[23] The testimony addressed the amount from the means test, not the $1,187.14 deficit on Schedule J.

The debtor testified she has made her Chapter 13 payments for a little over a year, at about $312 from each biweekly paycheck, roughly $676 a month. The trustee's records are not in evidence. No one asked the debtor to explain how she is making both her plan payments and her support payments on a budget showing a $1,187.14 monthly deficit.

The debtor testified about her purpose in filing. On cross-examination, she was asked whether her purpose was "to avoid making payments to Mr. Miller." She answered, "Correct." On redirect, she agreed with a leading question from her counsel asking whether her aim was stopping the garnishment.

## Conclusions of Law

The debtor bears the burden of proving each confirmation requirement by a preponderance of the evidence. *In re Styerwalt*, 610 B.R. 356, 368 (Bankr. D. Colo. 2019). The court has an "independent duty to assure compliance with Title 11, even if no objection is lodged." *Burnett v. Burnett (In re Burnett)*, 646

---

[22] The copy received as Doc. #90 still bears the March 19, 2026, signature date; the changes are handwritten and unsworn. Using her pay stub, the debtor described three: health insurance on line 25 rises from $402.89 to $441.89, charitable contributions on line 31 from $0 to $21.67, and retirement contributions on line 41 from $231.00 to $248.63. Doc. #89. The three total $78.30 and yield −$150.54; the remaining $0.89 is unexplained. The debtor's brief uses −$151.43. Doc. #92 at 3.

[23] Most of the debtor's direct testimony consisted of assent to her counsel's leading questions. No one objected, and the testimony is evidence. But "[l]eading questions should not be used on direct examination except as necessary to develop the witness's testimony." Fed. R. Evid. 611(c). Her agreement with counsel's summaries carries little weight on the points she must prove, and it supplied no amounts, dates, or other specifics.

F.3d 575, 581 (8th Cir. 2011) (quoting *In re Northrup*, 141 B.R. 171, 173 (N.D. Iowa 1991)).

*The Code Treats Prepetition and Postpetition Support Differently*

In Part 5(B) of her plan the debtor treats retroactively awarded support of $7,319 as a prepetition priority arrearage, to be paid through the plan. Mr. Miller contends the full amount first became payable after the petition and must be paid before confirmation. He is right. The majority of the support, $6,193, is postpetition support on any view. The remaining $1,126, which the state court made "due and payable" on February 1 and March 1, 2025, presents a closer question. But it also first became payable after the petition, when the state court entered its order.

The Code categorizes prepetition and postpetition support obligations differently. Section 507(a)(1)(A) gives allowed prepetition support claims first priority. They must be paid in full through the Chapter 13 plan unless the holder agrees to a different treatment. 11 U.S.C. § 1322(a)(2); *Burnett*, 646 F.3d at 580–81; *In re Little*, 634 B.R. 784, 792 (Bankr. E.D. Ark. 2021).

Postpetition support is not an allowable claim. A claim for support is disallowed "to the extent that . . . such claim is for a debt that is *unmatured* on the date of the filing of the petition and that is excepted from discharge under section 523(a)(5)." 11 U.S.C. § 502(b)(5) (emphasis added); *Burnett*, 646 F.3d at 582 (explaining postpetition support obligations are those "for which the Bankruptcy Code allows no proof of claim"). "Because postpetition domestic support obligations are not part of the debt owed as of the date of the petition, such debts qualify as unmatured." *Young v. Young (In re Young)*, 497 B.R. 904, 917 (Bankr. W.D. Ark. 2013).

Postpetition support, as an unmatured claim excepted from discharge under § 523(a)(5), cannot be paid through a Chapter 13 plan. It lies "beyond the purview of" the plan, which "could not, and did not, affect" it, and the holder may collect postpetition arrearages outside the plan, including by income withholding. *Burnett*, 646 F.3d at 582–83; *see also Young*, 497 B.R. at 917–18 (holding the Code's provisions "make it clear that solely prepetition domestic support obligations should be paid through a debtor's Chapter 13 plan").

Postpetition support must instead be paid in full before a plan can be confirmed. The Code does not use the term "postpetition support." It refers to a domestic support obligation that *first became payable* after the date of the filing of the petition. Specifically, to confirm a plan, the debtor must pay:

> all amounts that are required to be paid under a domestic support obligation and that first become payable after the date of the filing of the petition if the debtor is required by a judicial or administrative order, or by statute, to pay such domestic support obligation.

11 U.S.C. § 1325(a)(8). Failure to pay is cause for dismissal or conversion. *Id.* § 1307(c)(11). When the plan is completed, the debtor must certify payment before a discharge is entered. *Id.* § 1328(a).

*The $6,193 Is Postpetition Support on Any View*

The eleven installments for April 2025 through February 2026 are support for months after the petition, imposed by an order entered after the petition. They are postpetition support. No claim for them can be allowed, the plan cannot pay them, and they must be paid before confirmation. A plan recasting unpaid postpetition support as "past due" support "inaccurately characterize[s]" it and is "improper." *Young*, 497 B.R. at 909, 919 n.9. The debtor's proposal to pay the $6,193 through her plan prevents its confirmation.

*The Debtor's Best Case for the $1,126*

No order required the debtor to pay child support until March 2, 2026. On that day, the state court made the first payment "due and payable retroactively to the 1st of February 2025." Read literally, two installments fell due before March 10, 2025. The best case under the Code for treating the $1,126 as a claim *not* first payable after the date of the filing of the petition follows:

1. *Definition of a domestic support obligation.* A domestic support obligation is "a debt that *accrues* before, on, or after the date of the order for relief," "established or *subject to establishment* before, on, or after the date of the order for relief." 11 U.S.C. § 101(14A), (14A)(C) (emphasis added). The Nebraska Supreme Court describes retroactive support as support "that should have vested and accrued in prior months." *State ex rel. Kayla T. v. Risinger*, 731 N.W.2d 892, 897 (Neb. 2007). On this view, the February and March 2025 support accrued before the petition; it was subject to establishment before the petition and established after.

2. *A contingent, unliquidated claim is still a claim.* A "claim" includes a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A). Mr. Miller's complaint had been pending for seven weeks.

Absent equities to the contrary, Nebraska applies a modification "retroactively to the first day of the month following the filing date of the application for modification." *Riggs v. Riggs*, 622 N.W.2d 861, 870 (Neb. 2001). On this view, Mr. Miller held a contingent, unliquidated right to support for February and March 2025 on the petition date.

3. *"Unmatured" is not "contingent."* Section 502(b)(5) disallows *unmatured* support claims, not contingent or unliquidated ones, and § 101(5) lists the terms separately. The provision's target is future support, "paid from the debtor's post-petition property." *Pawtucket Credit Union v. Haase (In re Haase)*, 306 B.R. 415, 419 (B.A.P. 1st Cir. 2004). The argument requires the support be viewed as contingent, but not unmatured.

4. *"Owed to or recoverable by."* Section 507(a)(1)(A) reaches support "owed to or recoverable by" the obligee. If "recoverable by" adds anything, it arguably reaches support recoverable through a pending proceeding.

These arguments do not prevail.[24]

*The Full $7,319 First Became Payable After the Petition*

The debtor's counsel acknowledged the support was not due when the petition was filed and her brief states "[n]o domestic support obligation was owed on the date the petition was filed." The full $7,319 first became payable on March 2, 2026. The entire amount is a postpetition obligation the plan cannot pay. Six reasons support the conclusion.

*First, § 1325(a)(8) answers the question.* It asks when an amount "first become[s] payable." It does not ask when the support period ran, when the

---

[24] Some out-of-circuit authority supports portions of the arguments, but each case is distinguishable. *Haase* upheld a compromise allowing a spouse a prepetition priority support claim where a support proceeding was pending on the petition date. 306 B.R. at 421–23. But the panel reviewed the compromise deferentially, found only "some possibility" of a prepetition claim, and called the issue "very much in doubt." *Id.* at 422. It also acknowledged "unmatured" in § 502(b)(5) generally means postpetition, *id.* at 419. *White v. Bell (In re White)*, 212 B.R. 979 (B.A.P. 10th Cir. 1997), allowed priority for one month of support accruing before the petition. But an interim order entered before the petition already required the payment, and the panel affirmed disallowance of every installment falling due after the petition. *Id.* at 981, 984. *In re Ruitenberg*, 745 F.3d 647, 653 (3d Cir. 2014), treated a spouse's pending equitable distribution interest as a prepetition claim because "the right to payment exists." But it applied the Third Circuit's broad test for when a claim arises, not this circuit's right-to-payment test, and it concerned marital property, not support. *Id.* at 649, 651–52.

obligation could be said to have accrued, or whether the amount could also be described as a prepetition claim. "Payable" means presently enforceable. *See United States v. State Bank of N.C.*, 31 U.S. (6 Pet.) 29, 36 (1832) (distinguishing a debt owing from one presently payable). Under Nebraska law, a judgment for retroactive child support is "immediately due and collectible *upon entry of the decree*." *Risinger*, 731 N.W.2d at 897 (emphasis added). The modification order was entered March 2, 2026. Before then, no order required the debtor to pay support. On the petition date, March 10, 2025, Mr. Miller could not have garnished, sought contempt for, or otherwise enforced a February or March 2025 installment. It was not payable.

The state court's direction making the first payment "due and payable retroactively" does not change the result. The word "retroactively" *measured* support from February 2025. It did not make it *payable*. State law made it payable when the order was entered. An order entered in 2026 cannot make an amount enforceable in 2025, when no obligation existed. *Risinger* says as much: support "that should have vested and accrued in prior months" is due "upon entry" of the judgment. 731 N.W.2d at 897. "Should have" describes what would have happened had an order been in place. No order was.

*Second, no prepetition debt existed under Eighth Circuit precedent.* In this circuit, "a debt is incurred on the date upon which the debtor first becomes legally bound to pay." *Laws v. United Mo. Bank of Kan. City, N.A.*, 98 F.3d 1047, 1050 (8th Cir. 1996) (quoting *In re Iowa Premium Serv. Co.*, 695 F.2d 1109, 1111 (8th Cir. 1982) (en banc)). "The test for when a debt is incurred is whether the debtor is legally obligated to pay." *Id.* at 1051. *Laws* applied the rule to a preference, but "debt" means "liability on a claim." 11 U.S.C. § 101(12).

The Bankruptcy Appellate Panel for this circuit has applied the same principle to support. *See Arleaux v. Arleaux (In re Arleaux)*, 229 B.R. 182, 186 (B.A.P. 8th Cir. 1999). In *Arleaux*, the debtor's wife filed a petition for dissolution of their marriage on January 31, 1995. One week later, the debtor filed a Chapter 7 petition. The state court entered the dissolution decree awarding alimony and child support on March 25, 1996, more than a year after the bankruptcy filing. *Id.* at 183, 185–86. The debtor argued the support debt arose when his wife filed the dissolution petition, before his bankruptcy, and it was subject to his discharge. The panel disagreed. "A [dissolution] petition is just a petition; where the process concludes is not a certainty." *Id.* at 186. Filing the dissolution petition created no right to payment. The former wife's "right to payment of alimony and child support accrued at the time of the decree . . . ordering alimony and child support," after the bankruptcy petition. *Id.* (citing *McSherry v. Trans World Airlines, Inc.*, 81

F.3d 739, 740–41 (8th Cir. 1996); *Ellis v. Ellis (In re Ellis)*, 72 F.3d 628, 633 (8th Cir. 1995); *Bush v. Taylor*, 893 F.2d 962, 965 (8th Cir. 1990)).

The panel in *Arleaux* also distinguished support owed under a separate protective-order proceeding the wife began before the bankruptcy. That obligation, the panel observed, "would be the only debt" the debtor could have challenged in his bankruptcy. *Arleaux*, 229 B.R. at 185–86. Support imposed later by the dissolution decree was a new debt. *Id.* at 186.

The 1999 *Arleaux* decision was the second round of appeals in the case. In the first round, the Eighth Circuit upheld the denial of the debtor's motion to reopen his bankruptcy case. It concluded the support debt "arose thirteen months after he filed his [bankruptcy] petition; as such, it was new post-petition debt." *Arleaux v. Arleaux (In re Arleaux)*, 149 F.3d 1186 (8th Cir. 1998) (unpublished table decision), *quoted in Arleaux*, 229 B.R. at 184.

More recently, the panel agreed a claim for child support arose when the state court entered the judgment awarding it. The judgment came after the bankruptcy petition. *See LaMonda v. Harder (In re LaMonda)*, 656 B.R. 494, 497 (B.A.P. 8th Cir. 2024).

The installment dates do not change the analysis. In *Ellis*, a dissolution decree, modified on appeal before the bankruptcy, required the debtor to pay his former wife $300,000 for her interest in his pension and profit-sharing plan, in installments. He filed his bankruptcy petition before the first installment came due. The Eighth Circuit held the obligation was a prepetition debt: "the installment payments did not become post-petition debt merely because the dates of payment had not yet arrived." *Ellis*, 72 F.3d at 633. The obligation arose when the court imposed it and was "merely unmatured debt" until each payment fell due. *Id. Ellis* involved a property division, not support, but the rule follows from the Code's definitions of "claim" and "debt," which apply to both. *See id.* (citing 11 U.S.C. § 101(5), (12)). The same rule decides this case. The obligation arose when the state court imposed it on March 2, 2026, after the bankruptcy petition, so the installments it dated before the petition are postpetition debts.

*Arleaux* involved support running only from the decree forward, not retroactive support. Its reasoning applies with greater force here, where retroactivity itself was both uncertain and discretionary. A liability ripening into a debt only upon a future contingency is neither owing nor payable. *Ryan v. Douglas Cnty.*, 66 N.W. 30, 32 (Neb. 1896). On the petition date, liability

for the February and March 2025 installments depended on two future rulings.

- *Whether support would be ordered.* Modification requires a material change in circumstances occurring after the decree and not contemplated when it was entered. *Hotz v. Hotz*, 917 N.W.2d 467, 477 (Neb. 2018). The debtor opposed any modification and pleaded estoppel, unclean hands, and laches.

- *Whether support would be retroactive, and from when.* "Whether a child support order should be retroactive is entrusted to the discretion of the trial court." *Emery v. Moffett*, 697 N.W.2d 249, 254 (Neb. 2005). Retroactivity to the month after filing is the rule only "[a]bsent equities to the contrary." *Id.*; *Riggs*, 622 N.W.2d at 870. On the petition date, the debtor had a colorable equitable defense. Absent bad faith, Nebraska courts consider whether the "obligated parent cannot pay retroactive support and still meet current obligations." *Emery*, 697 N.W.2d at 254–55. The state court had not yet ruled on it.

*Third, even if Mr. Miller held a prepetition claim, § 502(b)(5) disallows it.* An unmatured obligation can be a prepetition claim. *Ellis* so held for installments of a property division. 72 F.3d at 633. Support is different. The Code disallows a claim "for a debt that is unmatured on the date of the filing of the petition and that is excepted from discharge under section 523(a)(5)." 11 U.S.C. § 502(b)(5). The provision matters for installments under a support order entered before the petition. Under *Ellis*, each such installment is a prepetition claim, unmatured until it falls due. Without § 502(b)(5), the obligee could claim every future installment against the estate. But Congress removed unmatured support from the claims process. Support not yet due on the petition date is paid from the debtor's postpetition income, outside the plan. *See Haase*, 306 B.R. at 419 (citing H.R. Rep. No. 95-595, at 352–54 (1977)). So the question is not whether Mr. Miller held a claim, or whether the claim was contingent. The question is whether the support was unmatured on the petition date.

It was. "Contingent," "unliquidated," and "unmatured" are distinct terms, but they are not mutually exclusive. Section 101(5) lists attributes a single claim may share. The Third Circuit's description in *Ruitenberg* shows it: the spouse's interest was "at the least, unliquidated and contingent on a final decree apportioning marital property, perhaps unmatured, and likely disputed." *In re Ruitenberg*, 745 F.3d 647, 650 (3d Cir. 2014). A claim matures when payment falls due. Until then, it is unmatured, even if also contingent or unliquidated. *Ellis*, 72 F.3d at 633 (installments were "merely

unmatured debt" until each payment fell due). On March 10, 2025, no payment for February or March 2025 was due. Even if Mr. Miller held a claim for those months, the claim was unmatured. Any claim for them is disallowed. A disallowed claim cannot be an "[a]llowed" priority claim under § 507(a)(1)(A), and the plan cannot pay it under § 1322(a)(2).

*Fourth, "owed to or recoverable by" is not a timing test; it identifies a claim holder*. The phrase tracks the definition of a domestic support obligation, which uses the same words to identify *who* holds the right: a spouse, former spouse, or child, the child's parent, guardian, or relative, or a governmental unit. 11 U.S.C. § 101(14A)(A). "Recoverable by" covers persons, such as a custodial parent or a governmental unit, who may collect support owed to someone else. The timing term is "as of the date of the filing of the petition." On the petition date, the February and March 2025 installments were neither owed to nor recoverable by anyone.

*Fifth, the* Russello *presumption works against the debtor*. Under the presumption, "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983) (citation modified). When Congress wants an obligation arising or becoming payable after the petition treated as a prepetition claim, it says so. It said so regarding various tax claims. *See* 11 U.S.C. §§ 502(i), 1305(a)(1), (b). It also said so for claims arising "after the order for relief but before conversion in a case that is converted under section 1112, 1208, or 1307." 11 U.S.C. § 348(d). The Code has no comparable provision for domestic support.[25]

*Sixth, the statutory structure points the same way*. The Code sorts domestic support by when it becomes payable, measured against the petition date. Support payable on the petition date may be an allowed priority claim, paid in full through the plan. 11 U.S.C. §§ 507(a)(1)(A), 1322(a)(2). Support first payable after the petition is paid outside the plan and must be current before confirmation and discharge. *Id.* §§ 1325(a)(8), 1328(a). Failure to pay it is cause for dismissal. *Id.* § 1307(c)(11). The debtor's reading would sort support by a different measure: the months it covers rather than when it became payable. Section 101(14A) offers her no help. Its "before, on, or after" language defines which debts are domestic support obligations; it does not sort them. The sorting provisions ask whether support was owed, matured, or

---

[25] Congress overhauled the treatment of domestic support in 2005, adding the definition in § 101(14A), moving support to first priority, and adding § 1325(a)(8). It added no comparable provision then either.

payable as of a given date, never what period it covers. *See id.* §§ 502(b)(5), 507(a)(1)(A), 1307(c)(11), 1325(a)(8). Measured by coverage, a support order entered any time after the petition could reach back before it, and an obligation enforceable only after the petition would become a claim payable over five years. Section 1325(a)(8) forbids that result.

As a result, the entire $7,319 *first became payable* on March 2, 2026, after the petition was filed. It is not a prepetition priority claim under § 507(a)(1)(A). Any claim for it would be disallowed under § 502(b)(5). It cannot be paid through the plan. Because Part 5(B) provides for a claim the Code disallows, the plan cannot be confirmed. 11 U.S.C. § 1325(a)(1); *Burnett*, 646 F.3d at 581–82. The $7,319, plus accrued interest,[26] must be paid in full before the plan is confirmed.[27] Independently, even if the $1,126 were a prepetition priority claim, the result would not change. The $6,193 would still need to be paid before confirmation, and the plan would still fail.

The holding is narrow. It rests on Nebraska law, under which a retroactive support judgment is due and collectible on entry. *Risinger*, 731 N.W.2d at 897. And it concerns support imposed for the first time by an order entered after the petition, when no support order existed on the petition date. It does not address arrearages accruing under a support order entered before the petition, which § 507(a)(1)(A) and § 1322(a)(2) govern, or support assigned to a governmental unit under § 507(a)(1)(B).

*The Plan Does Not Commit All Projected Disposable Income*

Mr. Miller asserts the debtor has not committed all disposable income. He holds an allowed unsecured claim, objects, and is not paid in full. Therefore, the debtor's plan must provide:

> all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

---

[26] Nebraska law makes the full retroactive judgment due on entry. Interest accrues on the full amount from the date of judgment. *Risinger*, 731 N.W.2d at 897. Interest on support keeps accruing after the petition and is not dischargeable. *Burnett*, 646 F.3d at 582.

[27] The debtor's position would also reward delay. Nebraska law protects the child and the custodial parent from "the delay inherent in our legal system." *Riggs*, 622 N.W.2d at 870; *Erica J. v. Dewitt*, 659 N.W.2d 315, 320 (Neb. 2003).

11 U.S.C. § 1325(b)(1)(B).

The debtor's disposable income will increase when her child support obligation terminates in the summer of 2027. About 33 months of the commitment period fall after the last support installment. Its end frees $563 a month. After the final installment, projected disposable income is about $533.55 a month, roughly $17,607 over the remaining 33 months.[28] Her plan commits none of it.

The Supreme Court resolved how future changes figure in the calculation:

> [W]hen a bankruptcy court calculates a debtor's projected disposable income, the court may account for changes in the debtor's income or expenses that are known or virtually certain at the time of confirmation.

*Hamilton v. Lanning*, 560 U.S. 505, 524 (2010). Departures from the means test belong in "unusual cases." *Id.* at 519. This is one. The change is fixed by court order, certain in amount, and conceded.

The Eighth Circuit reached the same result a year before *Lanning*. It held a bankruptcy court calculating projected disposable income "could not ignore" loan payments ending during the plan. The debtor remained "free to propose a tiered plan that increases payments to unsecured creditors after the 401(k) payments have ceased." *McCarty v. Lasowski (In re Lasowski)*, 575 F.3d 815, 819–20 (8th Cir. 2009). Courts applying *Lanning* require a step-up when a fixed monthly obligation ends mid-plan. *Burden v. Seafort (In re Seafort)*, 437 B.R. 204, 211–13 (B.A.P. 6th Cir. 2010); *Styerwalt*, 610 B.R. at 380–82.

The debtor admits the "termination of child support [is] a known or virtually certain event." But she argues "the event that triggers the termination of the obligation, and timing of the event, is less certain." She notes the timing can be "influenced by a number of things," including emancipation. But the state court's order terminates support when the child reaches majority, dies, marries, becomes self-supporting, or the court orders otherwise, "whichever event shall first occur." Every contingency listed ends the obligation sooner, not later. Each would only raise disposable income earlier. The amount and

---

[28] In her brief, the debtor states her projected disposable income after June 2027 would be $411.57 a month. That figure still deducts $121.98 a month on line 35 for the $7,319, which is not a prepetition priority claim. Without the deduction, projected disposable income is $533.55 a month (−$151.43 + $121.98 + $563), about $17,607 over the remaining 33 months before the trustee's fee.

the outside date are fixed and virtually certain. The debtor must account for the change in any amended plan based on the outside date.

The debtor next argues the increase in disposable income may be offset by future expenses. In her brief she argues Mr. Miller must prove "the amount actually freed for plan payments, and the absence of offsetting reasonably necessary expenses," and if he does not do so, "the proposed adjustment rests on assumption rather than a reality-based determination of ability to pay." She adds: "Courts may not substitute conjecture for evidence concerning future expenses."

The debtor is correct when stating an offset must rest on facts, not assumption or conjecture. But the burden runs the other way. Mr. Miller established the change with the state court order. The debtor conceded her disposable income would increase. Any offsetting expense is for the debtor to prove. A possible future expense, not itself known or virtually certain, cannot offset a known reduction. The remedy for an unforeseen expense is modification under § 1329. *Styerwalt*, 610 B.R. at 382–84.

*The Debtor Did Not Establish Feasibility*

The debtor must prove she "will be able to make all payments under the plan and to comply with the plan." 11 U.S.C. § 1325(a)(6). The standard is not demanding, but it has a floor. The plan proponent "must, at minimum, demonstrate that the Debtor's income exceeds expenses by an amount sufficient to make the payments proposed by the plan." *In re Olson*, 553 B.R. 343, 348 (Bankr. N.D. Ill. 2016). Projections "must be based on concrete evidence of financial progress and must not be speculative, conjectural or unrealistic." *In re Cherry*, 84 B.R. 134, 139 (Bankr. N.D. Ill. 1988).

On this record the debtor has not established feasibility. The evidence cuts both ways. She must pay $7,319 plus interest before confirmation and offered no evidence of a source. Her budget shows a deficit of $512.89 a month before any plan payment and $1,187.14 after. Her testimony about cutting discretionary spending named no expense, amount, or start date. But she has paid approximately $312 from each biweekly check for a little over a year, which is evidence of ability to pay. The debtor's student loan payment may offer a partial explanation. The payments are listed on her Schedule J, but the loans are in forbearance. The debtor is above median, so projected disposable income is measured by the means test, adjusted only for known or

virtually certain changes. Form 122C-2 does not allow a deduction for student loan payments. The debtor did not claim one.[29]

*The Debtor Cannot Receive a Discharge*

Section 1328(f) bars a Chapter 13 discharge for a debtor who received a discharge in a case filed under Chapter 7, 11, or 12 within four years, or under Chapter 13 within two years, before the current order for relief. 11 U.S.C. § 1328(f)(1)–(2). The prior case was filed 489 days before this one, so the bar applies whether the converted case counts as a Chapter 7 case under § 1328(f)(1) or a Chapter 13 case under § 1328(f)(2). The debtor concedes she cannot receive a discharge. Part 10.2 of the district's form plan revests property in the debtor "after a discharge is entered." With no discharge available, any amended plan should contain a provision overriding the vesting provision.

*This Plan Was Not Proposed in Good Faith*

On this record, the debtor did not establish the plan was proposed in good faith. The Eighth Circuit evaluates good faith under the totality of the circumstances. *Handeen v. LeMaire (In re LeMaire)*, 898 F.2d 1346, 1349 (8th Cir. 1990) (en banc); *United States v. Estus (In re Estus)*, 695 F.2d 311, 316–17 (8th Cir. 1982). The focus is on:

> whether the debtor has stated his debts and expenses accurately; whether he has made any fraudulent representation to mislead the bankruptcy court; or whether he has unfairly manipulated the Bankruptcy Code. . . . [T]he debtor's motivation and sincerity in seeking Chapter 13 relief, are particularly relevant.

*Tina Livestock Sales, Inc. v. Schachtele (In re Schachtele)*, 343 B.R. 661, 668 (B.A.P. 8th Cir. 2006) (citing *LeMaire*, 898 F.2d at 1349).

The debtor has not carried her burden. She cannot receive a discharge, and Mr. Miller's property settlement claim will survive. This case can do nothing except delay it. Asked whether her purpose in this case and the prior one was "to avoid making payments to Mr. Miller," she answered, "Correct." On redirect, she agreed her aim was stopping the garnishment. Here, stopping

---

[29] Part 11 of her plan provides the Aidvantage claim "will be paid as a long-term, unsecured debt to be paid outside the Plan." Because the means test allows no student loan deduction, paying Aidvantage outside the plan does not reduce projected disposable income. The court does not decide whether the treatment is otherwise permissible.

the garnishment and avoiding payments to Mr. Miller are the same purpose. Chapter 13 may legitimately stop a garnishment while a debtor repays or restructures the debt. This plan does neither. It pays nothing on the claim, even after her expenses fall in 2027.

The debtor's petition and schedules also contain inaccuracies about prior filings, Mr. Miller's claim, payments on loans in forbearance, and the number of her dependents.[30] The debtor's plan would pay postpetition support over five years in contravention of the Code. This is the fifth proposed plan, and the case has been pending more than nineteen months.

Some facts weigh in the debtor's favor. She has made plan payments for more than a year. The decision to convert her prior case was made on her counsel's advice. The prior case was before this court, so the petition's denial of a prior filing could not have misled it.

The plan as proposed, on these schedules and with this treatment of Mr. Miller and of postpetition support, does not satisfy § 1325(a)(3).

## Conclusion

The debtor's Fourth Amended Chapter 13 Plan fails 11 U.S.C. §§ 1325(a)(1) and (8), 1325(b)(1)(B), 1325(a)(6), and 1325(a)(3). The debtor may file another plan. It must commit all her projected disposable income, rest on accurate schedules, and be preceded by payment of all postpetition child support.[31]

IT IS THEREFORE ORDERED:

1. Confirmation of the debtor's Fourth Amended Chapter 13 Plan (Doc. #62) is denied under 11 U.S.C. §§ 1325(a)(1) and (8), (b)(1)(B), (a)(6), and (a)(3). Jeff Miller's objection, as amended, is sustained to the extent consistent with this order.

---

[30] Her counsel saw no need to amend because, in his view, the corrections would not change disposable income. The schedules are the debtor's sworn statement of her finances and central evidence on feasibility and good faith. 11 U.S.C. § 521(a)(1)(B); Fed. R. Bankr. P. 1008, 1009(a). Minor schedule errors with no effect on creditors, by a debtor found forthcoming and credible, do not show bad faith. *Styerwalt*, 610 B.R. at 386. Conversely, uncorrected schedules may reflect a lack of good faith.

[31] In her brief, the debtor invokes *Petro v. Mishler*, 276 F.3d 375 (7th Cir. 2002), for the proposition the court cannot add confirmation requirements. This order applies § 1325's requirements. It also separately sets conditions for keeping the case open under § 1307(c). Accurate schedules are a statutory duty. 11 U.S.C. § 521(a)(1)(B).

2. By November 13, 2026, the debtor must file:

   a. amended Schedules I and J reflecting current income, payroll deductions, household composition, and actual expenses, including any regular contributions from others;

   b. a signed amended Form 122C-2 reflecting the changes described at the confirmation hearing to lines 25, 31, and 41 and omitting the line 35 deduction for the $7,319;

   c. an amended petition stating she previously filed a bankruptcy case; and

   d. an amended Schedule E/F stating the amount of Jeff Miller's claim.

3. By November 13, 2026, the debtor must file an amended plan:

   a. applying all projected disposable income for the applicable commitment period, including the increase in disposable income beginning when her support obligation terminates;

   b. containing no child support arrearage in Part 5(B) and no provision for any amount due under the March 2, 2026, order of the District Court of Lincoln County, including the installments for February and March 2025; and

   c. conforming Part 10 to a case in which no discharge will be entered.

4. Before any hearing on confirmation of an amended plan, the debtor must pay all support first payable after March 10, 2025, under the March 2, 2026, order of the District Court of Lincoln County, including the $7,319 for February 2025 through February 2026 and accrued interest, and file a certification of payment. No confirmation hearing will be set until the certification is filed.

5. If the debtor does not timely comply with paragraphs 2 and 3, the trustee or Jeff Miller may file a certification of noncompliance, and the case will be dismissed without further notice or hearing. 11 U.S.C. § 102(1). No extension of the deadlines in paragraphs 2 and 3 will be granted absent a showing of good cause made before the deadline passes.

6. Jeff Miller's request for dismissal is denied without prejudice. Nothing in this order limits the right of the trustee or any party in interest to move

for dismissal under 11 U.S.C. § 1307(c), including § 1307(c)(11), or request conditions on dismissal under 11 U.S.C. § 349(a).

Dated: October 23, 2026

BY THE COURT:

/s/ Brian S. Kruse
Brian S. Kruse
Chief Bankruptcy Judge